United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

1
2
3
4
5
6
7
8  KENNARD WATKINS,                                    No. C 10-2539 SI (pr)
9              Plaintiff,                              **ORDER GRANTING MOTION FOR
                                                       SUMMARY JUDGMENT**
10         v.
11  BEN CURRY; et al.,
12             Defendants.
                                                  /
13
14                              **INTRODUCTION**
15         Kennard Watkins, formerly an inmate at the Correctional Training Facility ("CTF") in
16  Soledad, filed a *pro se* civil rights action under 42 U.S.C. § 1983, complaining of a one-year
17  delay in receiving a letter.  Per order filed on March 31, 2011, this court found that liberally
18  construed, Watkins stated a cognizable First Amendment claim under § 1983 against defendant
19  Amy Dzioba and ordered service.  Dzioba has moved for summary judgment and Watkins has
20  opposed the motion.  For the reasons discussed below, Dzioba's motion for summary judgment
21  will be granted and judgment will be entered in her favor.
22
23                              **BACKGROUND**
24         This case is about a single piece of mail that went missing in a prison mailroom handling
25  thousands of letters per day.  The letter turned up almost a year later and was delivered to
26  Watkins, but neither party knows with certainty where the letter spent those twelve months
27  before it was handed to Watkins.
28         The following facts are undisputed unless otherwise noted.

**United States District Court**
For the Northern District of California

1    Watkins was an inmate at CTF during the relevant time period.  Amy Dzioba was the

2  mailroom supervisor at CTF during the relevant time period.  She supervised seven full-time

3  office assistants and "miscellaneous redirected staff" in the mailroom.  Dzioba Decl., ¶ 3.

4    In 2007, Watkins filed a complaint with the Los Angeles Police Department ("LAPD")

5  regarding his criminal case and trial.  Watkins Depo., RT 10-11.  The LAPD sent Watkins a

6  form response letter via certified mail, dated September 27, 2007.  Complaint, Unnumbered

7  Exhibits (Docket #1 p. 21 of 35).  The letter notified Watkins that the LAPD had received his

8  complaint and was investigating it.[1]  *Id.*  The letter did not require Watkins to take any action

9  at all. *Id.*  The letter from the LAPD was addressed to Kennard Watkins at a Soledad post office

10  box address but did not identify Watkins as a prisoner and did not include his prisoner

11  identification number or housing assignment unit.[2]  *Id.* at 23.[3]

12    The letter from the LAPD arrived at CTF.  Neither party provided any evidence as to

13  when it first arrived at the prison.

14    An unknown person put the letter in correctional counselor ("C/O") Summers' mail slot

15  on September 29 or 30, 2008 – almost a year after it was mailed.  *Id.* at 20.  C/O Summers called

16

17  _____

    [1] The letter said:

18

19       This correspondence is to advise you that the [LAPD] is continuing
         to actively investigate your complaint you reported on September
20       20, 2007.  Your complaint is being thoroughly investigated and will
         undergo several levels of review.  We ask for your continued
21       patience, as these types of investigations take time to complete.  At
         the conclusion of the investigation and review, you will be notified
22       in writing of the investigative findings.

    Docket # 1, p. 21 of 35.
23

24  [2] A regulation regarding incoming inmate mail address requirements states: "[a]ll
    incoming mail shall be properly addressed.  Appropriately addressed mail shall include the
    inmate's name and department identification number."  Cal. Code Regs. tit. 15, § 3133.
25

26  [3] About five months after sending the September 27, 2007 letter, the LAPD sent another
    letter to Watkins informing him "that the investigation was complete and [his] allegations were
    unfounded."  Watkins Depo, RT 11.  The LAPD did not deny his complaint due to any failure
27  by Watkins to take action.  Watkins Depo, RT. 16.

28
                                          2

**United States District Court**
For the Northern District of California

1    Watkins into her office and delivered the letter to him on October 3, 2008.   When Watkins

2    received his letter, it had been opened and stapled to its envelope. *Id.*  The envelope had a

3    certified mail return receipt request still attached to it. *Id.*

4         C/O Summers wrote up a memorandum about the circumstances surrounding the receipt

5    of the letter.  In the memorandum, Summers reported a conversation she had with Dzioba in

6    which Dzioba said that, "[b]ecause this letter was addressed without any CDC # or inmate

7    housing identification, the individual who processed it probably thought it was a staff member

8    and did log it in on 10/9/07." Complaint, Unnumbered Exhibits (Docket #1 p. 20 of 35).

9         Within three days of receiving the letter, Watkins filed an inmate appeal regarding the

10   delay in receiving his mail.  The inmate appeal response stated that the reviewer interviewed

11   Amy Dzioba by telephone, and Dzioba reportedly said that:

12       [This] [p]iece of mail was inappropriately addressed, and upon receipt, mail was
         processed in error by the mailroom. We sent the mail into the institution. Since
13       then we have made procedural changes to locate inmates more thoroughly to
         ensure these errors do not happen. We also will return mail to sender for
14       additional information if inmate is not located by mailroom staff.

15   Complaint, Unnumbered Exhibits (Docket #1 p. 17 of 35).

16        In her declaration, Dzioba stated that in December 2008 she was interviewed regarding

17   Watkins' inmate appeal.  Upon investigation, she had determined that:

18       [S]ome staff member of the Mail Room, accidentally sent the letter somewhere
         into the administration building of the prison, rather than to plaintiff at his housing
19       unit. This initial error was responsible for some of the delay in plaintiff receiving
         it.   The letter was filed in plaintiff's central file, perhaps by the records
20       department, instead of being routed to the plaintiff.

21   Dzioba Decl., p. 2. Dzioba did not know which staff member processed the letter when it first

22   arrived at the CTF mailroom. *Id.*  Dzioba did not remember if she was the employee who sent

23   the letter into the administration building of the prison, but doubted that she was the employee

24   who did so because she was the mailroom supervisor and generally was not involved in

25   distributing mail. *Id.*  Dzioba did not deliver the letter to Summers' mail slot, and did not know

26   who put it there or how long the letter was in Summers' mail slot before Summers delivered it

27

28                                                    3

**United States District Court**
For the Northern District of California

1   to Watkins. *Id.*

2

3                    **LEGAL STANDARD FOR SUMMARY JUDGMENT**

4          Summary judgment is proper where the pleadings, discovery and affidavits show that

5   there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment

6   as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a

7   party who fails to make a showing sufficient to establish the existence of an element essential

8   to that party's case, and on which that party will bear the burden of proof at trial . . . since a

9   complete failure of proof concerning an essential element of the nonmoving party's case

10  necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

11  (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and

12  a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury

13  could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

14  248 (1986).    Generally, as is the situation with defendant's challenge to the First Amendment

15  claim, the moving party bears the initial burden of identifying those portions of the record which

16  demonstrate the absence of a genuine issue of material fact.    The burden then shifts to the

17  nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the depositions,

18  answers to interrogatories, or admissions on file, designate specific facts showing that there is

19  a genuine issue for trial."  *Celotex*, 477 U.S. at 324.

20         Where, as is the situation with defendant's qualified immunity defense, the moving party

21  bears the burden of proof at trial, he must come forward with evidence which would entitle him

22  to a directed verdict if the evidence went uncontroverted at trial.  *See Houghton v. Smith*, 965

23  F.2d 1532, 1536 (9th Cir. 1992).  He must establish the absence of a genuine issue of fact on

24  each issue material to his affirmative defense.  *Id.* at 1537; *see also Anderson*, 477 U.S. at 248.

25  When the defendant-movant has come forward with this evidence, the burden shifts to the non-

26  movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

27

28                                              4

United States District Court
For the Northern District of California

1     A verified complaint may be used as an opposing affidavit under Rule 56, as long as it

2  is based on personal knowledge and sets forth specific facts admissible in evidence.  *See*

3  *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's

4  verified complaint as opposing affidavit where, even though verification not in conformity with

5  28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct,

6  and allegations were not based purely on his belief but on his personal knowledge).  Plaintiff's

7  initial complaint and opposition to summary judgment is not verified and cannot be used as

8  evidence.  Plaintiff's first amended complaint is signed under penalty of perjury and suffices as

9  an admissible opposing affidavit.

10     The court's function on a summary judgment motion is not to make credibility

11  determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W.*

12  *Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence

13  must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn

14  from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.

15

16                                **DISCUSSION**

17  A.     First Amendment Claim

18     Prisoners enjoy a First Amendment right to send and receive mail.  *Witherow v. Paff*, 52

19  F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  Prison

20  officials have a responsibility to forward mail to inmates promptly.  *Bryan v. Werner*, 516 F.2d

21  233, 238 (3d Cir. 1975).  However, a temporary delay or isolated incident of delay or other mail

22  interference without evidence of improper motive does not violate a prisoner's First Amendment

23  rights.  *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999); *accord Smith v. Maschner*, 899

24  F.2d 940, 944 (10th Cir. 1990) (isolated incidents of mail interference without evidence of

25  improper motive do not give rise to a constitutional violation); *Rowe v. Shake*, 196 F.3d 778, 782

26  (7th Cir. 1999) (content-neutral, short-term, and sporadic delays in prisoner's receipt of mail did

27

28                                      5

United States District Court
For the Northern District of California

1   not violate his First Amendment rights). Absent evidence of a broader plan or course of conduct

2   to censor plaintiff's mail unconstitutionally, an honest error by prison officials does not justify

3   relief under § 1983. *See Lingo v. Boone*, 402 F. Supp. 768, 773 (C.D. Cal. 1975) (prisoner not

4   entitled to monetary relief under § 1983 where prison officials erroneously withheld a single

5   piece of mail on the grounds that it was inflammatory); *see also Smith*, 899 F.2d at 944

6   (defendants opened a single piece of legal mail by accident; "[s]uch an isolated incident, without

7   any evidence of improper motive or resulting interference with Smith's right to counsel or to

8   access to the courts, does not give rise to a constitutional violation"); *cf. Antonelli v. Sheahan*,

9   81 F.3d 1422, 1431-32 (9th Cir. 1996) (plaintiff stated a claim where he alleged not merely

10  negligent, but deliberate, obstruction of his mail that resulted in mail delivery being delayed for

11  an inordinate amount of time).[4]

12        On the undisputed evidence, a First Amendment violation is not shown. This was an

13  isolated incident of mail mishandling. There is not a whit of evidence that the delay was based

14  on the content of the letter or that the one-year delay was purposeful. And there is no evidence

15  that the delay had any impact on any legal proceeding. On this record, no reasonable jury could

16  conclude that Watkins' First Amendment rights had been violated by the one-year delay in the

17  delivery of the mail.

18        Watkins argues that there was *deliberate* mishandling of the letter. As proof, he urges

19  that the person who handled his letter did not follow CTF mailroom policies for handling

20  improperly addressed mail (which this letter indisputably was). According to Dzioba, the

21

22      [4]The Ninth Circuit has yet to determine whether more than mere negligence is necessary
23  for a First Amendment violation, although *Antonelli* seems to suggest that mere negligence
    would not be actionable. Several other circuits have concluded that a First Amendment claim
    may not rest on a merely negligent act. *See, e.g., Lovelace v. Lee*, 472 F.3d 179, 201 (4th Cir.
24  2006) ("negligent acts by officials causing unintended denials of religious rights do not violate
    the Free Exercise Clause"); *Richard v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988) (negligent
25  loss of mail not actionable); *Covenant Media of SC, LLC v. City of North Charleston*, 493 F.3d
    421, 436-37 (4th Cir. 2007) ("To hold that negligent handling of the application amounts to a
26  constitutional violation by the City would only trivialize the fundamental rights the First
    Amendment was meant to protect.")

27

28                                                      6

**United States District Court**
For the Northern District of California

1  following procedure exists for handling mail that does not have an inmate's CDCR number on

2  it:

3      If the mail does not have the inmate's CDC number written on it, a search by
        inmate name is performed. If there is no exact match between the recipient of the
4      mail and an inmate, the mail is returned to sender. If there is an exact match, the
        mailroom will write the inmate's CDC number and housing location on the mail
5      and process it. If not, the mail is returned to sender.

6  Opposition, Defendant's Responses to Interrogatories, Set One, p.2.[5]  Showing that the mail was

7  not handled in accordance with written policy supports an inference that the mail was

8  mishandled, but does not support an inference that the mail was *intentionally* mishandled.

9  Whether it was intentional or negligent or an innocent mistake is speculative. The evidence

10 suggests the absence of any reason or motive for defendant to intentionally delay or mishandle

11 the mail: Watkins did not know Dzioba and this was the only piece of mail he ever complained

12 about being mishandled. Watkins Depo., RT 39-41.

13     At best, Watkins has established that someone in the mailroom did not follow the

14 mailroom policies when he or she processed Watkins' letter. Watkins has not presented any

15 evidence that would allow a jury to reasonably infer that Dzioba or any other person deliberately

16 sent the letter into the prison administration buildings because of an improper motive. Rather,

17 the evidence shows only that, in a mailroom sorting and delivering thousands of pieces of mail

18 daily, a CTF mailroom employee ignored mailroom policies and mishandled a single letter. That

19 one incident of mail delay does not rise to the level of a First Amendment violation.

20     Watkins also argues that the sheer length of the delay proves a constitutional violation.

21 However, he has not shown that the length of the delay was anything other than pure

22 happenstance. The letter could have turned up in a week, a year, or a decade – or maybe never.

23

24

25     [5] Dzioba stated that this was the current policy, and did not state whether this was the
   policy in place when the mailroom processed Watkins' letter. Nonetheless the court will
26 assume, for purposes of this motion, that the same policy was in place when Watkins' letter was
   received because Dzioba did not state that there was a different policy at an earlier time, despite
27 being asked for the "current and past regulations" for handling misaddressed mail. *See*
   Opposition, Defendant's Responses to Interrogatories, Set No. 1, p. 2.

28                                        7

1  Thus the cases where evidence is developed showing that delay has been caused by a prison

2  policy (such as prison officials' need to inspect mail) are not helpful in guiding the analysis of

3  a letter that simply goes missing, only to never turn up or to turn up a year late.  With no

4  evidence of a purposeful delay in delivery, the loss of the letter for a year did not amount to a

5  First Amendment violation by whoever delayed the mail.

6

7  **B.    Dzioba's Individual Liability**

8         Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the

9  plaintiff can show that the defendant proximately caused the deprivation of a federally protected

10 right. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664

11 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives another of a constitutional right within the

12 meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits

13 to perform an act which he is legally required to do, that causes the deprivation of which the

14 plaintiff complains.  *See Leer*, 844 F.2d at 633.  The inquiry into causation must be

15 individualized and focus on the duties and responsibilities of each individual defendant whose

16 acts or omissions are alleged to have caused a constitutional deprivation.  *Leer*, 844 F.2d at 633

17 To defeat summary judgment, sweeping conclusory allegations will not suffice; the plaintiff

18 must instead "set forth specific facts as to each individual defendant's" actions which violated

19 his or her rights.  *Leer*, 844 F.2d at 634.[6]

20        Watkins relies heavily on Dzioba's alleged admission in a telephone interview about

21 Watkins' inmate appeal – in which she said  "[w]e sent the letter into the institution" – to show

22 that Dzioba's actions proximately caused the delay in receiving his mail.   Nevertheless, in a

23

24        [6]The parties agree that there is no *respondeat superior* liability in a section 1983 action.
   *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Ybarra v. Reno Thunderbird Mobile*
25 *Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984); *accord Monell v. Dep't of Social Servs.*,
   436 U.S. 658, 691 (1978) (local governments cannot be liable under § 1983 under *respondeat*
26 *superior* theory).  Nonetheless, much of Watkins' argument attempts to foist exactly this kind
   of liability on Dzioba.

27

28                                              8

United States District Court
For the Northern District of California

1  deposition, Watkins admitted that he did not know the identity of the mailroom employee who

2  processed the letter.  *See* Watkins Depo., RT 27 ("Amy [Dzioba] spoke of the individual.

3  However, that leads me to believe that thats [sic] one of her employees . . . That she [Dzioba]

4  had knowledge of the letter being sent to records.")  He also does not dispute the evidence that,

5  as the mailroom supervisor, Dzioba generally was not involved in distributing incoming mail and

6  therefore it was unlikely that she actually handled his mail. As Dzioba correctly notes, the

7  evidence does not support the inference that Dzioba mishandled Watkins' letter, only that

8  *someone* in the CTF mailroom mishandled the letter.

9       Under § 1983, a supervisor "is only liable for constitutional violations of his subordinates

10  if the supervisor participated in or directed the violations, or knew of the violations and failed

11  to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Here, all that

12  Watkins has shown is that one year after the letter was sent into the administration building,

13  Dzioba, as the mailroom supervisor, investigated and found out that some mailroom employee

14  mishandled his letter.  Watkins has not provided evidence that Dzioba participated in, directed,

15  or knew of any mailroom employee's alleged wrongful conduct and failed to stop it.  Dzioba is

16  entitled to summary judgment on the ground that Watkins has not provided evidence from which

17  a reasonable jury could find that she proximately caused the purported deprivation of his First

18  Amendment right to receive mail.

19

20  *C.    Qualified Immunity*

21       The defense of qualified immunity protects "government officials . . . from liability for

22  civil damages insofar as their conduct does not violate clearly established statutory or

23  constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*,

24  457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth

25  a two-pronged test to determine whether qualified immunity exists.  First, the court asks:

26  "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show

27

28                                                  9

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    the officer's conduct violated a constitutional right?" *Id.* at 201.  If no constitutional right was

2    violated if the facts were as alleged, the inquiry ends and defendants prevail. *Id.*  If, however,

3    "a violation could be made out on a favorable view of the parties' submissions, the next,

4    sequential step is to ask whether the right was clearly established . . . The contours of the right

5    must be sufficiently clear that a reasonable official would understand that what he is doing

6    violates that right. . . .The relevant, dispositive inquiry in determining whether a right is clearly

7    established is whether it would be clear to a reasonable officer that his conduct was unlawful in

8    the situation he confronted." *Id.* at 201-02 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

9    (1987)).  Although *Saucier* required courts to address the questions in the particular sequence

10   set out above, courts now have the discretion to decide which prong to address first, in light of

11   the particular circumstances of each case. *See Pearson v. Callahan*, 553 U.S. 223, 236 (2009).

12         As discussed, the record does not show that a year-long delay in delivery of a single piece

13   of mail violated Watkins' First Amendment rights.  Even if a constitutional violation had been

14   shown, Dzioba, or any CTF mailroom employee, would prevail on the second *Saucier* prong.

15   For the purposes of qualified immunity the official's conduct must be viewed not as a broad

16   general proposition, but in the context of the specific facts of the case. *Saucier*, 522 U.S. at 202.

17         The specific facts of this case show that the letter was improperly addressed because it

18   did not include the recipient's CDCR number or otherwise indicate that the recipient was a

19   prisoner rather than a staff member. A reasonable prison official in Dzioba's position (or in the

20   position of the mailroom employee who actually handled the letter) would not have understood

21   that sending the letter into the administration building of the prison would be unlawful where

22   the letter did not have the recipient's prisoner number or otherwise indicate that the recipient was

23   a prisoner (e.g., by including the housing unit address).  Even if the person handling the mail

24   ignored CTF mailroom policies on handling misaddressed mail by sending the letter to the

25   administration building, qualified immunity would not be defeated. *See Cousins v. Lockyer*, 568

26   F.3d 1062, 1071-72 (9th Cir. 2009) (prison operations manual describing duties that, if

27

28                                            10

1  performed, may have avoided the alleged wrong to plaintiff, irrelevant to qualified immunity

2  inquiry because manual did not establish a federal constitutional right).  Dzioba is entitled to

3  qualified immunity against Watkins' claim.

4

5  **CONCLUSION**

6  For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

7  (Docket # 22.)   Defendant is entitled to judgment on the merits, because the isolated delay in

8  the mail did not rise to the level of a First Amendment violation and because plaintiff has not

9  demonstrated that defendant's actions caused any delay in mail.  Defendant also is entitled to

10  qualified immunity.  Judgment will be entered in defendant's favor and against plaintiff.  The

11  clerk will close the file.

12  IT IS SO ORDERED.

13  Dated: October 25, 2011                          _____

                                                SUSAN ILLSTON
14                                              United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          11